UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**Matthew Rau**, an individual, and         Case No. 2:19-cv-10822-MAG-MKM
**Mchrenzie Investments, LLC**, a
Michigan limited liability company,         Hon. Mark A. Goldsmith

                    Plaintiffs,

v.

**Calvert Investments, LLC** a Michigan limited
liability company,

                    Defendants.
_____/

## RESPONSE TO DEFENDANT CALVERT INVESTMENTS LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**NOW COME** Plaintiffs Matthew Rau and Mchrenzie Investments, LLC, and through

their attorneys, CHRISTENSON & FIEDERLEIN, PC, by B. D. "Chris" Christenson, III, and

hereby submit their Response to Defendant's Motion to Dismiss Plaintiff's First Amended

Complaint and state as follows and further relies on the accompanying brief:

1.   In Response to Paragraph 1 of Defendant's Motion to Dismiss, Plaintiffs admit the

allegations contained therein.

2.   In Response to Paragraph 2 of Defendant's Motion to Dismiss, Plaintiffs deny the

allegations contained therein as the subject loans were consumer loans which the

Defendant purposefully misidentified as commercial loans in an attempt to circumvent the Real Estate Settlement Procedures Act ("RESPA") and the Truth in Lending Act ("TILA").

3.   In Response to Paragraph 3 of Defendant's Motion to Dismiss, Plaintiffs deny the allegations contained therein and leave Defendant to its strictest proofs.

4.   In Response to Paragraph 4 of Defendant's Motion to Dismiss, Plaintiffs deny the allegations contained therein as the Defendant is a creditor as defined by TILA because the Defendant regularly extends consumer credit because it extended consumer credit secured by a dwelling more than 5 times in the preceding calendar year.

5.   In Response to Paragraph 5 of Defendant's Motion to Dismiss, Plaintiffs deny the allegations contained therein because rescission claims may be brought within three years after the date of consummation of the transaction.

6.  In Response to Paragraph 6 of Defendant's Motion to Dismiss, Plaintiffs deny the allegations contained therein because the Amended Complaint properly identifies how the contract was breached and because the implied covenant of good faith and fair dealing is recognized by Michigan law pursuant to *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822 (6th Cir. 2003).

7.   In Response to Paragraph 7 of Defendant's Motion to Dismiss, Plaintiffs deny the allegations contained therein and further respond that the elements of fraud were pled with

adequate particularity.

8.   In Response to Paragraph 8 of Defendant's Motion to Dismiss, Plaintiffs deny the allegations contained therein and state that the grounds for violations of the Michigan Consumer Protection Act were stated in the Amended Complaint.

9.   In Response to Paragraph 9 of Defendant's Motion to Dismiss, Plaintiffs deny the allegations contained therein and state that the grounds for promissory estoppel were stated in the Amended Complaint.

10.   In Response to Paragraph 10 of Defendant's Motion to Dismiss, Plaintiffs deny the allegations contained therein and assert that Defendant failed to follow the proper procedures for the foreclosure of residential mortgages and Plaintiffs have been damaged by Defendant's actions.

11.   In Response to Paragraph 11 of Defendant's Motion to Dismiss, Plaintiffs deny the allegations contained therein and assert that the Amended Complaint sufficiently alleges multiple claims for relief and dismissal is inappropriate.


        WHEREFORE, Plaintiffs Matthew Rau and Mchrenzie Investments, LLC, and through their attorneys, CHRISTENSON & FIEDERLEIN, PC, by B. D. "Chris" Christenson, III, respectfully request that the Defendant's Motion to Dismiss be denied and for any other

and further relief as the Court deems just and appropriate under the circumstances.

Dated:  July 17, 2019                    Respectfully submitted,

                                          CHRISTENSON & FIEDERLEIN, PC

                                          /s/ B.D. "Chris" Christenson, III
                                          B.D. "Chris" Christenson, III (P61009)
                                          Attorney for Plaintiffs
                                          302 East Court Street
                                          Flint, MI 48502
                                          (810) 232-1112

## LOCAL RULE CERTIFICATION

I, Chris Christenson of CHRISTENSON & FIEDERLEIN,PC, certify that this

document complies with Local Rule 5.1(a), including: double-spaced (except for quoted

materials and footnotes); at least one-inch margins on the top, sides, and bottom;

consecutive page numbering; and type size of all text and footnotes that is no smaller than

10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I

also certify that it is the appropriate length. Local Rule

7.1(d)(3).

Dated:  July 17, 2019            Respectfully submitted,

CHRISTENSON & FIEDERLEIN, PC

/s/ B.D. "Chris" Christenson, III
B.D. "Chris" Christenson, III (P61009)
Attorney for Plaintiffs
302 East Court Street
Flint, MI 48502
(810) 232-1112

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
DETROIT DIVISION


MATTHEW RAU, an individual, and            Case No. 2:19-cv-10822-MAG-MKM
MCHRENZIE INVESTMENTS, LLC, a
Michigan limited liability company,        Hon. Mark A. Goldsmith

                    Plaintiffs,

v.

CALVERT INVESTMENTS, LLC a Michigan limited
liability company,

                    Defendants.

_____

CHRISTENSON & FIEDERLEIN, PC          CLARK HILL PLC
B.D. Christenson, III (P61009)        Kevin A. Fanning (P57125)
302 East Court Street                 151 S. Old Woodward Ave., Ste. 200
Flint, MI 48502                       Brimingham, MI 48009
(810) 232-1112                        (248) 988-5875
cchristenson@cflegal.net              kfanning@clarkhill.com
Attorney for Plaintiffs

                                      Bethany G. Stawasz (P75578)
                                      500 Woodward Ave., Ste. 3500
                                      Detroit, MI 48226
                                      (313) 965-8300
                                      bstawasz@clarkhill.com
                                      Attorneys for Defendants

_____

## BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT CALVERT INVESTMENTS LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

<u>TABLE OF CONTENTS</u>

CONCISE STATEMENT OF ISSUES PRESENTED ................................................................. v

CONTROLLING AND MOST APPROPRIATE AUTHORITIES ........................................... vii

STATEMENT OF FACTS ........................................................................................................ 1

STANDARD OF REVIEW ........................................................................................................ 7

I.    THE COURT MUST NOT CONSIDER THE ADDIDAVIT (EXHIBIT A) ATTACHED TO DEFENDANT'S MOTION TO DISMISS AND THE EXHIBIT SHOULD BE EXCLUDED ........................................................................................................ 8

II.   THE ALLEGATIONS IN PLAINTIFFS' COMPLAINT, IF ACCEPTED AS TRUE, ARE SUFFICIENT TO SUPPORT CLAIMS FOR RELIEF UNDER RESPA AND TILA...... 9

    a.  Counts II and III of Plaintiffs' Complaint are not barred by the statute of limitations ........................................................................................................ 9

    b.  The Windmill Pointe transaction was a disguised consumer loan ....................... 11

    c.  Plaintiffs' claims relate to the servicing of the subject loans ................................ 12

        i. The January 24, 2019 correspondence relates to servicing as defined by RESPA ........................................................................................................ 13

        ii. Plaintiffs properly allege that the loans are subject to the provisions of RESPA ........................................................................................................ 13

        iii. Plaintiffs properly allege Defendant is subject to the provisions of 12 C.F.R. § 1026.41 ........................................................................................ 14

        iv.. Plaintiffs properly allege Defendant is subject to the provisions of 12 C.F.R § 1026.19 ........................................................................................ 15

III.  THE ALLEGATIONS IN PLAINTIFFS' COMPLAINT, IF ACCEPTED AS TRUE, ARE SUFFICIENT TO SUPPORT CLAIMS FOR RELIEF FOR VARIOUS STATE LAWS. ........................................................................................................ 16

    a.  Plaintiffs have sufficiently pled factual allegations to constitute a breach of contract between the parties ................................................................................ 16

    b.  Michigan law recognizes a claim for breach of the implied covenant of good faith and fair dealing ................................................................................................ 17

    c.  The Amended Complaint alleges the claim of fraud with sufficient particularity... 18

    d.  The Michigan Consumer Protection Act applies to these transactions................ 20

    e.  The Amended Complaint properly alleges elements concerning promissory estoppel which is a recognized cause of action ..................................................... 22

     f.  Defendant wrongfully foreclosed on the properties and the foreclosures should be set aside .................................................................................................. 25

CONCLUSION............................................................................................................ 25

<u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

Does Plaintiffs' Amended Complaint fail to state a claim upon which relief may be granted based upon Defendant's alleged violation of the Real Estate Settlement Procedures Act ("RESPA") and the Truth in Lending Act ("TILA"), at 12 C.F.R. § 1024.1, et seq. and 12 C.F.R. §1026.1, et seq., respectively, where Plaintiffs signed commercial, rather than residential mortgage loans, where Plaintiffs can point to no error in "servicing" of the loans, where Calvert Investments is a "small servicer," servicing far fewer than 5,000 loans, and thereby exempt from the requirements of 12 C.F.R. §1026.41, where Calvert Investments is not a "creditor" as defined by TILA because it has never extended consumer credit more than twenty-five times in a calendar year, and where some of these claims are clearly time-barred?

| | |
|---|---|
| Plaintiffs answer: | No. |
| Defendant answers: | Yes. |
| The Court should answer: | No. |

Does Plaintiffs' Amended Complaint fail to state a claim upon which relief may be granted for breach of contract and the covenant of good faith and fair dealing where the allegations fail to identify the specific terms of the contract allegedly breached and where Michigan courts do not recognize a cause of action for breach of the implied covenant of good faith and fair dealing?

| | |
|---|---|
| Plaintiffs answer: | No. |

Defendant answers:           Yes.

The Court should answer:     No.

Does Plaintiffs' Amended Complaint fail to state a claim upon which relief may be granted for fraud where a contract governs the relationship between the parties, Plaintiffs failed to allege a violation of a legal duty separate and distinct from the contractual obligations, and failed to state with particularity the circumstances constituting the fraud under Fed.R.Civ.P. 9(b)?

Plaintiffs answer:          No.

Defendant answers:           Yes.

The Court should answer:     No.

Does Plaintiffs' Amended Complaint fail to state a claim upon which relief may be granted for violations of the Michigan Consumer Protection Act ("MCPA") where the MCPA does not apply to mortgage transactions and where Plaintiffs failed to identify the specific factual basis for the purported MCPA violations?

Plaintiffs answer:          No.

Defendant answers:           Yes.

The Court should answer:     No.

Does Plaintiffs' Amended Complaint fail to state a claim upon which relief may be granted for promissory estoppel where no clear or definite promise is identified, where

Plaintiffs failed to plead underlying facts in support of its promissory estoppel claim and where the claim is also barred by the statute of frauds in this context?

Plaintiffs answer:                 No.

Defendant answers:            Yes.

The Court should answer:      No.

Does Plaintiffs' Amended Complaint fail to state a claim upon which relief may be granted for improper foreclosure, where the notice of foreclosure sent to Plaintiff Rau contained the information required by the mortgage agreement, and where Plaintiffs suffered no prejudice resulting from the alleged failure to include the exact amount of delinquent taxes due on the property?

Plaintiffs answer:                 No.

Defendant answers:            Yes.

The Court should answer:      No.

<u>CONTROLLING AND MOST APPROPRIATE AUTHORITIES</u>

15 U.S.C. § 1640
12 C.F.R § 1024.2
12 C.F.R. § 1024.35(a)
12 C.F.R. § 1024.35(b)(11)
12 C.F.R. § 1026.2(17)
12 C.F.R. § 1026.41

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

Cases

*Appalachian Railcar Servs., Inc. v. Boatright Enters., Inc.,*
  602 F. Supp. 2d 829 (W.D. Mich. 2008) ...................................................................... 17
*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................................... 7
*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .................................................................................................... 8
*Bennett v. MIS Corp.,*
  607 F.3d 1076 (6th Cir. 2010) ................................................................................... 18
*Bowens v. Aftermath Entm't,*
  254 F.Supp.2d 629 (E.D.Mich. 2003) ......................................................................... 9
*Excel Homes, Inc. v. Locricchio,*
  7 F. Supp. 3d 706 (E.D. Mich. 2014) ......................................................................... 8
*Freeman v. Wozniak,*
  617 N.W.2d 46 (2000) ............................................................................................... 23
*Hi–Way Motor Co. v. International Harvester Co.,*
  247 N.W.2d 813 (1976) ............................................................................................. 18
*Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.,*
  532 N.W.2d 541 (1995) ............................................................................................. 20
*Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v.*
*Omnicare, Inc.,*
  583 F.3d 935 (6th Cir. 2009) ..................................................................................... 18
*Miller–Davis Co. v. Ahrens Const., Inc.,*
  817 N.W.2d 609 (2012) ............................................................................................. 16
*Newton v. Bank West,*
  686 N.W.2d 491 (2004) ............................................................................................. 21
*Operations Management International, Inc. v. Tengasco, Inc.,*
  35 F.Supp.2d 1052 (E.D.Tenn.1999) ......................................................................... 22
*Parkhurst Homes, Inc. v. McLaughlin,*
  466 NW2d 404 (1991) ............................................................................................... 22
*QQC, Inc. v. Hewlett–Packard Co.,*
  258 F.Supp.2d 718 (E.D.Mich.2003) .................................................................. 8,9,14
*Rood v. Midwest Matrix Mart, Inc.,*
  87 N.W.2d 186 (1957) ............................................................................................... 19
*Schulthies v. Barron,*
  167 N.W.2d 784 (1969) ............................................................................................. 23
*Sloan v. Urban Title Sers., Inc.*
  689 F Supp 2d 123 (DDC 2010) ............................................................................... 11
*Sparton Tech., Inc. v. Util-Link, LLC,*
  248 F. App'x 684 (6th Cir. 2007) ............................................................................... 22

*Sweet Air Inv., Inc. v. Kenney*,
  739 N.W.2d 656, 659 (2007) .................................................................. 23
*Uhl v. Komatsu Forklift Co.*,
  512 F.3d 294 (6th Cir. 2008) ................................................................. 19
*Warren Prescriptions, Inc. v. Walgreen Co.*,
  No. 17-10520, 2018 WL 287951 (E.D. Mich. Jan. 4, 2018) ........................... 17
*Zaborski v. Kutyla*,
  185 N.W.2d 586 (1971) ........................................................................ 23

Statutes
15 U.S.C. §1602(g) ............................................................................... 14
15 U.S.C. §1635 .................................................................................. 10
15 U.S.C. §1640 .................................................................................. 10
M.C.L. § 445.904(1)(a) .......................................................................... 21
M.C.L. § 445.903(1)(bb) ......................................................................... 21
M.C.L. § 445.903(1)(n) .......................................................................... 21
M.C.L. § 445.903(1)(o) .......................................................................... 21
M.C.L. § 600.3204 ............................................................................... 23

Rules
Fed. R. Civ. Proc. 10(c) ........................................................................ 8,9
Fed. R. Civ. Proc. 12(b)(6) .............................................................. 9,10,11,14

Regulations
12 C.F.R. §1024.2 ................................................................................ 12
12 C.F.R. §1024.2(b)(1) ......................................................................... 13
12 C.F.R. §1024.35(a) ........................................................................... 12
12 C.F.R. §1024.35(b)(11) ...................................................................... 12
12 C.F.R. §1026.2(17) ........................................................................... 15
12 C.F.R. §1026.32(a)(1)(a) .................................................................... 15
12 C.F.R. §1026.41 .............................................................................. 15

## STATEMENT OF FACTS

In September of 2014, Defendant Calvert Investments. LLC ("Calvert Investments") issued a mortgage to Plaintiff Matthew Rau ("Rau") for the real property located at 336 River Road.  Am. Comp. ¶ 11.  The mortgage was a residential mortgage and the River Rd. property was used as Rau's residence and was the first transaction between the parties. *Id, ¶*12.   In 2015, Rau approached Mark Calvert ("Calvert"), owner of Calvert Investments, to purchase another home.   Am. Comp. ¶ 13.  During the conversation between Rau and Calvert, Calvert informed Rau that because he did not want to be subject to the licensing requirements of the Dodd Frank Act, Calvert's attorney advised Calvert to require Rau to create a limited liability company under which Rau would purchase the new home and obtain the mortgage from Calvert Investments.  Am. Comp. ¶ 14.  At that time, Calvert loaned Rau $250.00 to set up the limited liability company, which is now known as Mchrenzie Investments, LLC ("Mchrenzie"), and a commercial mortgage was executed between the parties.  Am. Comp. ¶¶ 15-16.

In 2017, Rau was interested in purchasing another home located at 427 Windmill Pointe Drive, Flushing, MI 48433 ("Windmill") and contacted Calvert in order to obtain financing for the purchase.  Am. Comp. ¶ 21.  Calvert agreed to provide financing to Rau, and as a result, Rau entered into a Purchase Agreement for the Windmill property to be used as his primary residence.   Am. Comp. ¶ 22.   Again, Calvert required that the mortgage

1

transaction occur within Mchrenzie despite the fact that Calvert knew the Windmill property was going to be used as Rau's residence. Am. Comp. ¶ 23.

On June 30, 2017, Rau executed a promissory note to obtain funds to purchase the Windmill home secured by a mortgage in favor of Calvert Investments. Am. Comp. ¶ 25; Ex 1-2. According to the Closing Sheet provided for the Windmill property, Rau and Mchrenzie were required to pay an undisclosed Transaction Fee of $1,500.00 to Calvert Investments LLC and an Account Set-up Fee of $125.00 paid to Janet Brusich CPA. Am. Comp. ¶ 25; Ex 3. Rau was never provided with signed copies of the Promissory Note or Mortgage for the Windmill property, nor was he notified of his right to rescind the transaction. Am. Comp. ¶ 28-29. Moreover, none of the documents produced to Rau by Calvert or Calvert Investments regarding the Windmill property contained proper disclosures regarding the amount financed, finance charge, payment schedule, total of payments, annual percentage rate, and the security interest. Am. Comp. ¶ 30.

Rau lived at the Windmill property until he purchased another home located at 604 Warren Ave., Flushing, MI 48433 ("Warren"). Am. Comp. ¶ 31. On November 7, 2017, Rau approached Calvert to obtain a loan for the Warren property. Am. Comp. ¶ 32. On November 7, 2017, Calvert Investments sent Rau an approval letter for financing in the amount of $118,000.00 for the Warren property. Am. Comp. ¶ 33. For reasons unknown to Rau, Calvert contacted Rau on November 13, 2017 to inform Rau that Calvert Investments would only loan Rau $115,000.00 despite the prior approval letter. Am. Comp. ¶ 34. On or about November

16, 2017, Calvert contacted Rau again and informed Rau that Calvert Investments wanted more money from the proceeds of the Windmill property ($12,500.00 in additional funds), and closing for the Warren property was scheduled for the next day at noon.  Am. Comp. ¶ 35. The continued representations by Calvert and changes to the loan terms leading up to the property closing were done intentionally knowing that Rau did not have the $12,500.00 available, that the closing was scheduled for November 17, 2017, and Rau would be unable to secure financing elsewhere in such a short amount of time.  Am. Comp. ¶ 36.  The $12,500.00 was not shown as a principal payment to the loan, nor was it shown as interest. Am. Comp. ¶ 37.

Rau executed a Promissory Note and Mortgage with Calvert Investments with respect to the Warren property on or about November 16, 2017. Am. Comp. ¶ 38; Ex 4-5.  Rau was never provided with signed copies of the Promissory Note or Mortgage for the Warren property, nor was he notfied of his right to rescind the loan.  Am. Comp. ¶¶ 39-40.  None of the documents produced to Rau by Calvert or Calvert Investments regarding the Warren property contained proper disclosures regarding the amount financed, finance charge, payment schedule, total of payments, annual percentage rate, and the security interest.  Am. Comp. ¶ 41.

Pursuant to the terms of the Warren Promissory Note, Rau was to pay Calvert Investments a sum of $115,000.00 with interest of 10.00% per annum for 36 months.  Am. Comp. ¶ 42.  The Warren Promissory Note also required Rau to make a one-time payment

of $12,500.00 on or before April 1, 2018 or upon sale of the Windmill property, whichever occurred first, as a result of Calvert's demand for these additional funds less than 24 hours prior to Rau's closing on the Warren property. Am. Comp. ¶ 43. The provision requiring the $12,500.00 payment was unilaterally added to the Warren Promissory Note by Calvert and Calvert Investments just prior to Rau closing on the Warren property, giving Rau no time to pursue any other means of financing and was not shown as a payment toward principal. Am. Comp. ¶ 44.

According to the Warren Promissory Note, upon the occurrence of any Event of Default, Calvert Investments could declare the entire balance then owing to be accelerated and immediately due and payable "without presentment, demand or notice of dishonor..." Am. Comp. ¶ 45. Paragraph 21 of the Warren Mortgage provided that Calvert Investments shall give notice to Rau prior to acceleration which specifies the default, the action required to cure the default, a date, not less than 30 days from the date the notice is given to Rau by which the default must be cured and that failure to cure the default may result in acceleration. Am. Comp. ¶ 46. The notice required by Pargaraph 21 of the Warren Mortgage must inform Rau of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or for any other defense to the acceleration and sale and no notice under this provision was provided to Plaintiffs. Am. Comp. ¶ 47. Rau never received any account statements from Calvert Investments for either the Windmill or Warren properties. Am. Comp. ¶ 48.

In January of 2018, Rau fell behind in payments on the Windmill property, but Rau was able to bring the mortgage current. Am. Comp. ¶ 49. Later that year, on October 13, 2018, Rau went to pay the real property taxes for the Windmill and Warren properties when he discovered those tax bills had already been paid. Am. Comp. ¶ 50. On or about October 11, 2018, Calvert Investments, by and through Calvert, sent Rau and Mchrenzie a letter titled "Unpaid property taxes." Calvert did not receive this letter until October 15, 2018 after he attempted to pay the tax bills himself. Am. Comp. ¶ 51.

The October 11, 2018 letter stated that Calvert Investments paid property taxes of $2,273.81 for the Warren property and $3,536.30 for the Windmill property and that the amounts would be added to the principal balance owed for each property, but the letter did not contain the notice to cure as required. Am. Comp. ¶ 52; Am. Comp. Ex 6. The October 11, 2018 letter did not seek to recoup the property taxes paid by Calvert Investments and did not state that Rau was in default of the either the Windmill or Warren mortgage, nor did the letter provide an opportunity to cure. Am. Comp. ¶ 53.

On October 31, 2018, Calvert Investments sent a Notice of Mortgage Sale to Rau and Mchrenzie seeking to foreclose on the Windmill property. Am. Comp. ¶ 54; Am. Comp. Ex 7. Rau received the foreclosure notice for the Windmill property from Calvert Investments on November 14, 2018. Am. Comp. ¶ 55. Immediately following his receipt of that notice, Rau contacted Calvert, who stated that the taxes were not paid, that he was not required to give Rau notice, that he would not accept payment for the taxes from Rau. Am. Comp. ¶ 56. On

November 20, 2018, Rau, by and through his attorney, contacted Calvert Investments'
attorney to inquire about payment of the taxes, and was again informed that Calvert
Investments would not accept payment for the taxes.  Am. Comp. ¶ 57.  Subsequent to
November 20, 2018, Calvert Investments again refused to accept payment of taxes from Rau.
Am. Comp. ¶ 58.

Prior to the Notice of Mortgage Sale, neither Rau nor Mchrenzie were informed of the
default, informed of the right to cure the default, informed of the 30 day period to cure the
default, or notified of the right to reinstate or to bring a court action to assert the non-existence
of a default or other defense to foreclosure.  Am. Comp. ¶ 59.  Moreover, prior to the Notice
of Mortgage Sale, Calvert and Calvert Investments refused to accept payment of the property
taxes despite Rau's continued efforts to pay.  Am. Comp. ¶ 60.

On January 4, 2019, Calvert Investments, by and through Calvert, sent a letter to Rau
titled "Default of Mortgage (604 Warren Avenue)."  Am. Comp. ¶ 61.  The letter stated that
Rau failed to make the $12,500.00 payment due April 1, 2018 and failed to pay real estate
taxes for the Warren property in the amount of $3,536.30.  Am. Comp. ¶ 62; Ex 8.  On January
9, 2019, Calvert Investments held a sheriff's sale for the Windmill property.  Am. Comp. ¶ 63.
On January 24, 2019, Rau, by and through counsel, sent a letter to Calvert Investments
explaining that the Warren Default Letter did not contain accurate information and did not
comply with proper mortgage foreclosure procedures and that Rau would continue making
payments toward the Warren property.  Am. Comp. ¶ 64; Ex 9.  On January 29, 2019, Calvert

Investments sent a letter in response to Rau's January 24, 2019 letter stating that although the information was inaccurate, Calvert Investments was going to proceed accordingly.  Am. Comp. ¶ 65; Ex 10.  It is believed that a foreclosure sale was conducted for the Warren property on March 20, 2019.  Am. Comp. ¶ 66.

Calvert Investments has required other individuals to obtain limited liability companies in order to disguise the residential mortgages as commercial mortgages in order to circumvent state and federal licensing and regulations pertaining to residential mortgages, including but not limited to John Roe as SKIDROE LLC, Adam Abt as RED ADAM LLC, and Perry Kendall as KENDALL PROPERTIES LLC.  Am. Comp. ¶ 69.  Calvert Investments issued at least seven (7) mortgages in 2011, ten (10) mortgages in 2012, five (5) mortgages in 2013, ten (10) mortgages in 2014, three (3) mortgages in 2015, four (4) mortgages in 2016, thirteen (13) mortgages in 2017, three (3) mortgages in 2018, and one (1) mortgage in 2019, ytd.  Am. Comp. ¶67.  Neither Calvert nor Calvert Investments is licensed under Michigan Secure and Fair Enforcement for Mortgage Licensing Act (SAFE Act) and the Michigan Loan Originators Licensing Act (MLOLA).  Am. Comp. ¶70.

## STANDARD OF REVIEW

Fed. R. Civ. Proc. 12(b)(6) allows dismissal of a complaint for failure to state a clam upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868

(2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct.

1955, 167 L. Ed. 2d 929 (2007).  The plaintiff is not required to provide "detailed factual

allegations," but rather the "factual allegations must be enough to raise a right to relief

above a speculative level." *Id.*, at 555.   In determining whether a complaint states a claim

upon which relief can be granted, the Court must proceed "on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *Id.*, at 555.  "[A] well-pleaded

complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

improbable, and that a recovery is very remote and unlikely." *Id., at* 556 (internal citation

marks omitted).

I.      THE COURT MUST NOT CONSIDER THE AFFIDAVIT (EXHIBIT A) ATTACHED
        TO DEFENDANT'S MOTION TO DISMISS AND THE EXHIBIT SHOULD BE
        EXCLUDED

        "When adjudicating a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), the Court must not consider matters outside of the pleadings."  *Excel Homes, Inc.*

*v. Locricchio*, 7 F. Supp. 3d 706, 710 (E.D. Mich. 2014); *QQC, Inc. v. Hewlett–Packard*

*Co.,* 258 F.Supp.2d 718, 720 (E.D.Mich.2003), *citing* Fed.R.Civ.P. 12(b)(6).  Although a court

may not consider matters outside the pleadings on a motion to dismiss, the court may

consider documents properly introduced by a defendant only if the documents are referred to

in the plaintiff's complaint and are central to the plaintiff's claims pursuant to Rule 10(c) of the

8

Federal Rules of Civil Procedure. *Id; See also Bowens v. Aftermath Entm't,* 254 F.Supp.2d

629 (E.D.Mich. 2003). In *QQC, Inc.,* the Court reasoned that:

> Rule 10(c) of the Federal Rules of Civil Procedure provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Rule 10(c) is permissive, however, and a plaintiff is not obligated to attach to the complaint the written instrument upon which the action is premised. *See Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 89 (6th Cir.1997). Nonetheless, if the plaintiff fails to attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit. *Id.* "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Id.*

*QQC, Inc. v. Hewlett–Packard Co.,* 258 F.Supp.2d 718, 720-721 (E.D.Mich.2003).

Here, the Affidavit attached to Defendant's Motion to Dismiss is a matter outside the

pleadings and must be excluded from the Court's consideration in this Motion. The Affidavit

is not a written instrument within the meaning of FRCP 10(c) and was not referred to in

Plaintiffs' Amended Complaint. Rather, the Affidavit purports to set forth Defendant's own set

of facts outlying his defenses to the claims in Plaintiffs' Amended Complaint. Such Affidavit

must be excluded by the Court since this Motion was brought under Rule 12(b)(6) and matters

outside the pleadings cannot be considered. The Affidavit is inappropriate for a 12(b)(6)

Motion.

II.     <u>THE ALLEGATIONS IN PLAINTIFFS' COMPLAINT, IF ACCEPTED AS TRUE, ARE
        SUFFICIENT TO SUPPORT CLAIMS FOR RELIEF UNDER RESPA AND TILA.</u>

a. **Counts II and III of Plaintiffs' Complaint are not barred by the statute of limitations.**

Claims under the Truth in Lending Act ("TILA") have two limitations periods.  Claims for damages under TILA have a one year statute of limitations pursuant to 15 U.S.C. §1640 and claims for rescission under TILA have a three year period from the date of consummation of the transaction 15 U.S.C. §1635.  Plaintiffs' Complaint allege causes of action under TILA for both damages and for rescission of promissory notes and mortgages for the Windmill and Warren properties thereby invoking both the one year and three year limitations period of TILA.

Plaintiffs assert that Defendant failed to provide monthly statements from the time the loans were issued to the present, and as a result, Plaintiffs have been damaged.  The one year limitations period for the damages claim would cover damages resulting from the failure to send monthly statements from March 20, 2018 to March 20, 2019, the date the Complaint was filed (Count II).  The allegations in Count II of the Amended Complaint clearly set forth a claim for damages resulting from Defendant's failure to provide monthly statements beginning at the loan inception, on June 30, 2017, to the date the Complaint was filed, March 20, 2019. That period of time necessarily includes the one-year period prior to filing this case, and as such, the claim for damages under TILA are not time-barred.

Moreover, Count III of Plaintiffs' Amended Complaint sets forth allegations that the Defendant failed to provide the TILA disclosures at the time the loans were executed, on June 30, 2017 and November 16, 2017.  Pursuant to 15 U.S.C. §1635, "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon

the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor…" Thus, Plaintiffs have until June 30, 2020 and November 16, 2020 to rescind the loans for failure to provide the necessary disclosures. The filing of the Complaint on March 20, 2019 falls squarely within that limitations period, and as such, the claims are not barred by the statute of limitations.

b.  The Windmill Pointe transaction was a disguised consumer loan.

It is true that the provisions of the Real Estate Settlement Procedures Act (RESPA) and TILA apply to consumer loans; i.e. loans for personal, family, and household use. The thrust of Plaintiffs' Amended Complaint is the fact that Defendants disguised the loans as commercial loans in order to circumvent the requirements under certain federal regulations, including RESPA and TILA. That same argument was made in *Sloan v. Urban Title Sers., Inc.,* and the Court in *Sloan* determined that that the ultimate question of whether the loans were unlawfully disguised by the defendant as a commercial loan in order to avoid fair lending laws and disclosure requirements was a question of fact that was not suitable for resolution under summary judgment. *Sloan v. Urban Title Sers., Inc.* 689 F Supp 2d 123, 128 (DDC 2010).

Plaintiffs' Amended Complaint alleges that Defendant required the properties be placed into the name of a business specifically because Defendant did not want to subject himself to the Frank-Dodd Act. In addition, the Amended Complaint alleges that the

Defendant was aware that Plaintiff intended to reside in the properties and Plaintiff did actually reside in the properties, causing the properties to be used for consumer purposes.  Those facts are identical to the facts identified as the issue in *Sloan*, and therefore the Court cannot dismiss Counts I, II, and III at the 12(b)(6) stage and the issue would not even be appropriate down the road for Summary Judgment.

## c.  Plaintiffs' claims relate to the servicing of the subject loans.

Pursuant to 12 C.F.R. §1024.35(a) Defendant was required to take certain steps when it received notification from Plaintiffs that there was an error regarding Defendant's calculation of the property taxes owed by Plaintiffs.  The provisions of RESPA apply to errors "relating to the servicing of a borrower's mortgage loan."   12 C.F.R. §1024.35(b)(11).   "Servicing" is defined as

> "receiving any scheduled periodic payments from a borrower pursuant to the terms of any federally related mortgage loan, including amounts for escrow accounts under section 10 of RESPA (12 U.S.C. 2609), and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the mortgage servicing loan documents or servicing contract. In the case of a home equity conversion mortgage or reverse mortgage as referenced in this section, servicing includes making payments to the borrower."

12 C.F.R. §1024.2.  The servicing requirements of RESPA apply to loans that are secured on residential property and for which the servicer is a creditor as defined in section 103(g) of the Consumer Credit Protection Act (15 U.S.C. §1602(g), that makes

residential real estate loans aggregating more than $1,000,000.00 per year.  12 C.F.R.

§1024.2(b)(1).

i.   *The January 24, 2019 correspondence relates to servicing as defined by RESPA.*

The January 24, 2019 letter attached to Plaintiffs' Amended Complaint asserts an error

regarding the calculation and payment of the property taxes for the two properties which fall

under the definition of RESPA servicing.  According to the Mortgage for the Warren Property,

"Borrower shall pay to Lender on the date monthly payments are due under the Note, until

the Note is paid in full, a sum ("Funds") for; (a) yearly taxes and assessments which may

attain priority over this Security Instrument as a lien on the Property…These items are called

'Escrow Items.'"  Am. Comp. Ex 5.  **The same paragraph of that Mortgage references that**

**the escrow account is subject to RESPA.**  *Id.*  The January 24, 2019 letter clearly indicates

an error relating to Defendant's calculation and payment of property taxes for the Warren

property by confusing which taxes were due and owing for that property and the Windmill

property, and the Mortgage clearly states that the provisions of RESPA apply to the Escrow

Items for that Mortgage.  Thus, the Amended Complaint properly alleges a servicing error

under RESPA.

ii.   *Plaintiffs properly allege that the loans are subject to the provisions of RESPA.*

First, Plaintiffs' Amended Complaint asserts that Defendant is a creditor within the

definition of TILA and RESPA.  Am. Comp. ¶¶ 8, 68, 96.  Specifically, Plaintiffs alleged that

Defendant had issued numerous mortgages in prior years and that Defendant required the

individuals who had requested those loans place the properties into the names of a business in order to circumvent the requirements of TILA and RESPA.  Am. Comp. ¶¶ 67-69.  The Amended Complaint also alleges that Defendant is an unlicensed mortgage broker under Michigan Secure and Fair Enforcement for Mortgage Licensing Act (SAFE Act) and the Michigan Loan Originators Licensing Act (MLOLA).  Am. Comp. ¶70.

Second, the Defendant cannot rely on factual allegations contained in the Affidavit of the Defendant because the Court cannot look outside the pleadings on a 12(b)(6) Motion.  *See QQC, Inc. v. Hewlett–Packard Co.,* 258 F.Supp.2d 718, 720-721 (E.D.Mich.2003).  The Court must exclude the Affidavit, and the factual allegations contained therein, and view the Complaint's allegations as true.  Plaintiffs alleged that Defendant is a servicer under RESPA and creditor under TILA and RESPA and therefore the RESPA claims must survive this Motion.

### iii.    Plaintiffs properly allege Defendant is subject to the provisions of 12 C.F.R. §1026.41.

As previously stated, this Court cannot consider matters outside the pleadings on a 12(b)(6) Motion unless the document is referred to in the plaintiff's complaint **and** is central to the claims.    *See QQC, Inc. v. Hewlett–Packard Co.,* 258 F.Supp.2d 718, 720-721 (E.D.Mich.2003).  Plaintiffs Amended Complaint does not refer in any way to an Affidavit of counter-facts which would be produced by the Defendant.  Rather, this is an attempt by the Defendant to assert a defense to the claims against it.  Thus, Defendant's Affidavit in support

14

of his defense to the provisions of 12 C.F.R. §1026.41 must be excluded from the Court's consideration in this Motion.

### iv.   *Plaintiffs properly allege Defendant is subject to the provisions of 12 C.F.R. §1026.19.*

Plaintiffs' Amended Complaint sufficiently alleges that the Defendant is a creditor within the meaning of TILA.  Pursuant to TILA, a "creditor" is defined as "a person who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment), and to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract."  12 C.F.R. §1026.2(17).  "A person regularly extends consumer credit only if it extended credit … more than 25 times (or more than 5 times for transactions secured by a dwelling) in the preceding calendar year."  *Id.*

"A person regularly extends consumer credit if, in any 12-month period,

the person originates more than one credit extension that is subject to

the requirements of §1026.32 or one or more such credit extensions through a mortgage

broker."  *Id.*  Subsection 1026.32 discusses high cost mortgages which are residential

mortgages involving interest rates in excess of 6.5% per annum.  C.F.R. §1026.32(a)(1)(a).

The Amended Complaint alleges that Defendant is a "creditor" within the meaning of TILA.  Am. Comp. ¶8. The interest rate for the Windmill loan was 9.5% and the interest rate for the Warren loan was 10.00%.  Am. Comp. Ex 1; Ex 4.  Both loans were issued in 2017

15

and both loans exceed 6.5% interest and are therefore high cost mortgages pursuant to 12

C.F.R. §1026.32.  There are also allegations that the Defendant issued numerous other

disguised consumer loans since 2011.  Am. Comp. ¶¶67-69.  The fact that Defendant

issued at least two high cost mortgages in 2017 cause Defendant to be a creditor for the

purposes of TILA, and thus Count III must survive this Motion.

III.    THE ALLEGATIONS IN PLAINTIFFS' COMPLAINT, IF ACCEPTED AS TRUE, ARE
SUFFICIENT TO SUPPORT CLAIMS FOR RELIEF FOR VARIOUS STATE LAWS.

a.    **Plaintiffs have sufficiently pled factual allegations to constitute a breach of
contract between the parties.**

A party claiming a breach of contract must establish (1) that there was a contract, (2)

that the other party breached the contract and, (3) that the party asserting breach of contract

suffered damages as a result of the breach. *Miller–Davis Co. v. Ahrens Const., Inc.*, 817

N.W.2d 609 (2012).  The Amended Complaint alleges two contracts between the parties –

the loan and mortgage agreements for the Windmill and Warren properties. Am. Comp. ¶106.

The Amended Complaint further alleges that Defendants materially breached the contract by

paying the Windmill and Warren property taxes without first providing notice to the Plaintiffs

of its intention to do so and then proceeded to foreclose on the properties as a result of the

unpaid property taxes while at the same time refusing to allow the Plaintiffs to cure.  Am.

Comp. ¶107.[1]   In addition, Plaintiffs allege that as a result of Plaintiffs' breach of contract

---

[1] It is important to note that had the mortgages been properly classified as residential mortgages,
notice and opportunity to cure would have been required.

between the parties, the properties were wrongfully foreclosed and caused Plaintiffs other damages.   Am. Comp. ¶109.   Assuming these allegations are true, Plaintiff's Amended Complaint properly plead the allegations for breach of contract and Count IV should not be dismissed.

### b.  Michigan law recognizes a claim for breach of the implied covenant of good faith and fair dealing.

The covenant of good faith and fair dealing is an implied promise in every contract that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Appalachian Railcar Servs., Inc. v. Boatright Enters., Inc.*, 602 F. Supp. 2d 829 (W.D. Mich. 2008).   Despite the Defendant's contention otherwise, Michigan law provides for a cause of action for the breach of good faith and fair dealing when the covenant creates an obligation not otherwise contemplated in the contract and the covenant is not being used to override an express contractual term.   *Warren Prescriptions, Inc. v. Walgreen Co.*, No. 17-10520, 2018 WL 287951, at *1 (E.D. Mich. Jan. 4, 2018).

The Amended Complaint alleges the Defendant breached the implied covenant of good faith and fair dealing by paying property taxes on the Windmill and Warren properties that were not yet delinquent and because Defendant never notified Plaintiffs that Defendant intended to pay the taxes that were not delinquent at the time.   Am. Comp. ¶¶113-114. Additionally, upon learning that the taxes were paid by Defendant, Plaintiffs attempted to

17

tender payment of the taxes to the Defendant, but the Defendant would not accept the payment and proceeded to foreclose on the properties.  Id.  Those allegations do not override an express contractual term and thus the covenant of good faith and fair dealing applies to Defendant's actions and Count VI must survive this Motion.

c.  The Amended Complaint alleges the claim of fraud with sufficient particularity.

When bringing a claim for fraud, a party must state "with particularity" the circumstances constituting the fraud. Fed. R. Civ. P. 9(b); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010). The complaint must allege (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. *Hi–Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976).  The complaint must also "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009) (quotation marks and citation omitted).

The Amended Complaint states the claim of fraud with particularity.  The Amended Complaint states that Mark Calvert and Calvert Investments made representations to the

18

Plaintiffs at the time the contracts were executed that the mortgage transactions were commercial in nature when, in reality, the transactions were residential, identifying the speaker, when the statements were made, and why the statements were false. Am. Comp. ¶¶ 118-120. In addition, the Amended Complaint asserts that the representation was false, and Defendant knew the representation was false, because Plaintiff Rau informed Calvert that Rau intended to reside in the properties. Am. Comp. ¶¶ 121-122. The Amended Complaint also alleges that Defendant made the statements in order to induce Plaintiffs into entering into the transaction so that Defendant would not have to comply with the federal laws relating to residential mortgages. Am. Comp. ¶¶ 123-124. Furthermore, it is alleged that Plaintiffs relied on Defendant's representations and suffered injury as a result because Plaintiffs executed the documents being completely unaware of Defendant's intent to circumvent the laws and to improperly foreclose on the mortgages. Am. Comp. ¶¶125-126.

Under Michigan law, parties are entitled to bring fraud in the inducement actions when they are induced into entering into an agreement on the basis of false representations. *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 304 (6th Cir. 2008); *Rood v. Midwest Matrix Mart, Inc.*, 350 Mich. 559, 87 N.W.2d 186, 190 (1957). Fraud in the inducement is exactly what the Amended Complaint asserts. Defendant fraudulently induced Plaintiffs into executing commercial loans and mortgages for real estate transactions which the Defendant knew were residential for the specific purpose of avoiding the requirements of the federal laws which protect the rights of borrowers. A claim of fraud in the inducement, by definition, redresses

19

misrepresentations that induce the buyer to enter into a contract but that do not in themselves constitute contract or warranty terms subsequently breached by the seller.  *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.,* 209 Mich. App. 365, 375 (1995).  The claims for fraud in the inducement must be separate from breach of terms of the contract.  *Id.*

Plaintiffs' allegations of fraud are separate and distinct from its breach of contract claims.  The main issues in this case revolve around the fact that Defendant purposefully disguised the loans as commercial loans rather than residential loans in order to circumvent federal lending and servicing laws.  The loan documents, on their face, contain provisions relating to commercial loans and whether or not a breach occurred would be dependent upon the terms of those commercial documents.  However, the loans should have been properly categorized as residential transaction subject to RESPA and TILA which would have afforded Plaintiffs more rights than what were included in the express terms of the contract documents.  Had the fraud not occurred, and the loans were residential, Plaintiffs would have been provided proper notice, cured the purported defaults, and the properties would not have been foreclosed upon.  The fraud claims make no mention of any breach of the loan documents, but rather, the fraud claim asserts that Plaintiffs never would have entered into the agreements with Defendant had Plaintiff known that Defendant was not going to afford him the proper notice of default and cure provisions that he would have received pursuant to a residential transaction.  Thus, the fraud claim cannot be dismissed pursuant to 12(b)(6).

d.  The Michigan Consumer Protection Act applies to these transactions.

20

It is ironic that Defendant asserts that the Michigan Consumer Protection Act (MCPA) does not apply to mortgage transactions because "transactions or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States" is exempt from the MCPA. M.C.L. § 445.904(1)(a); *Newton v. Bank West*, 686 N.W.2d 491 (2004).   However, Defendant is not licensed or operating under any regulatory board.  Further, the Defendants do not identify the laws which cause the transactions between Plaintiffs and Defendant to be exempt, unless Defendant agrees that the transactions fall within TILA and RESPA.  If Defendant concedes RESPA and TILA apply, then perhaps Plaintiffs may agree the transactions are exempt from the Michigan Consumer Protection Act.

Moreover, Plaintiffs' Complaint does specifically state that the Defendant violated the MCPA by:  (1) MCL 445.903(1)(n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction; (2) MCL 445.903(1)(o) Causing a probability of confusion or of misunderstanding as to the terms or conditions of credit if credit is extended in a transaction; and (3) MCL 445.903(1)(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, and otherwise using unfair, unconscionable, or deceptive, acts or practices in connection with its business.  Am. Comp. ¶129.

Each and every paragraph of the Amended Complaint were incorporated by reference, thereby incorporating the fact that, among other things, Defendant disguised the loans to Plaintiffs as commercial in order to circumvent the requirements of TILA and RESPA which ultimately allowed Defendant to foreclose on the properties without providing the proper notice and opportunity to cure the purported defaults.  Am. Comp. ¶137.  Additionally, the Amended Complaint alleges that Defendant was required to be licensed as a mortgage loan originator and was not, further subjecting Defendant to the MCPA.  Am. Comp. ¶¶ 130-133.  Defendant's claims that the MCPA does not apply are wholly without merit.

e. **The Amended Complaint properly alleges elements concerning promissory estoppel which is a recognized cause of action.**

Promissory Estoppel requires "(1) a promise, (2) that the promisor reasonably should have expected to induce action of a definite and substantial character on the part of the promise, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances requiring that the promise be enforced if injustice is to be avoided." *Parkhurst Homes, Inc. v. McLaughlin*, 187 Mich App 357, 360-361; 466 NW2d 404 (1991). Promissory estoppel is an alternative theory to recovery on an express contract.  *Sparton Tech., Inc. v. Util-Link, LLC*, 248 F. App'x 684, 689–90 (6th Cir. 2007) (*citing Operations Management International, Inc. v. Tengasco, Inc.*, 35 F.Supp.2d 1052 (E.D.Tenn.1999)). The allegations in the Amended Complaint are sufficient to establish the elements of promissory estoppel in the event that this Court deems the disguised commercial loans unlawful.

Additionally partial performance of a contract regarding an interest in land may remove the contract from the statute of frauds.  *Zaborski v. Kutyla,* 29 Mich.App. 604, 185 N.W.2d 586 (1971).  As an alternate theory and cause of action, Plaintiff's promissory estoppel claim must survive a 12(b)(6) motion.

f.  **Defendant wrongfully foreclosed on the properties and the foreclosures should be set aside.**

Michigan courts have held that once the statutory redemption period lapses, courts can set aside a foreclosure sale where the mortgagor has made "a clear showing of fraud, or irregularity." *Schulthies,* 167 N.W.2d at 785; *see also Sweet Air Inv., Inc. v. Kenney,* 275 Mich.App. 492, 739 N.W.2d 656, 659 (2007).  "The misconduct must relate to the foreclosure procedure itself." *Id.* (citing *Freeman v. Wozniak,* 241 Mich.App. 633, 617 N.W.2d 46, 49 (2000)).

The Complaint alleges misconduct in relation to the foreclosure procedure itself and therefore the sheriff's sales must be set aside.  Pursuant to MCL 600.3204, a party may foreclose a mortgage by advertisement if there is a default in a condition of the mortgage by which the power of sale became operative.  In this instance, Plaintiffs were not in default and Defendant has no right to foreclose.  Defendant paid the property taxes before the taxes were delinquent and Defendant would be adding the amounts to the principal amounts of the loans. Plaintiffs were not in default of the obligations under the contracts.  Once the Plaintiffs realized

Defendant paid the taxes, Plaintiffs attempted to tender the funds to the Defendant but the Defendant failed to accept the sums.

Defendant then sent a defective letter to Plaintiffs stating that the taxes were paid, but that letter misstated the amount of taxes paid for each property. Even after Plaintiffs notified Defendant of the errors and attempted to tender payment to the Defendant, Defendant foreclosed on the properties. Had the error been corrected and/or the Defendant accepted the sums from Plaintiff at the time of tender, the foreclosures would not have occurred. Moreover, had Defendant not disguised the residential loans as commercial, Plaintiffs would have been entitled to proper notice of any purported default of the loans and an opportunity to cure pursuant to TILA and RESPA. Defendant's actions in the foreclosure process are clearly fraudulent and irregular and have caused severe prejudice to the Plaintiffs justifying a set-aside. In accepting these allegations as true, Plaintiffs have clearly established a cause of action for wrongful foreclosure and to set aside the sheriff's sales.

Defendant asserts that Plaintiffs redemption of the Windmill property prior to the expiration of the redemption period prevents Plaintiffs from recovery. However, not only is this a matter outside the pleadings which cannot be examined for a 12(b)(6) motion, Plaintiffs were merely protecting their interests in the property through the redemption and in no way ratified the foreclosure sale. These assertions are factual disputes which cannot be resolved at this stage and should not be considered in this Motion to Dismiss.

## CONCLUSION

The Defendant's actions in connection with the real estate transactions with the Plaintiff constitute a clear intention to circumvent the federal and state laws which are designed to protect homeowners from this exact behavior. The allegations contained in Plaintiffs' Amended Complaint are sufficient to state claims for relief for violations of RESPA, TILA, fraud, breach of contract, promissory estoppel, Michigan Consumer Protection Act, and wrongful foreclosure, and the claims are fully within the statute of limitations periods. While the Defendant attempts to assert an Affidavit of his own set of facts, this Affidavit is not part of the pleadings which can be examined for the purposes of a 12(b)(6) Motion and must therefore be excluded.

Dated: July 17, 2019                    Respectfully submitted,

                                        CHRISTENSON & FIEDERLEIN, PC

                                        /s/ B.D. "Chris" Christenson, III
                                        B.D. "Chris" Christenson, III (P61009)
                                        Attorney for Plaintiffs
                                        302 East Court Street
                                        Flint, MI 48502
                                        (810) 232-1112

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**Matthew Rau**, an individual, and          Case No. 2:19-cv-10822-MAG-MKM
**Mchrenzie Investments, LLC**, a
Michigan limited liability company,          Hon. Mark A. Goldsmith

              Plaintiffs,

v.

**Calvert Investments, LLC** a Michigan limited
liability company,

              Defendants.

_____/

## <u>CERTIFCATE OF SERVICE</u>

I hereby certify that on July 17, 2019, I, B.D. "Chris" Christenson, III, electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the counsel on record.

Dated:  July 17, 2019          Respectfully submitted,

                            CHRISTENSON & FIEDERLEIN, PC

                            <u>/s/ B.D. "Chris" Christenson, III</u>
                            B.D. "Chris" Christenson, III (P61009)
                            Attorney for Plaintiffs
                            302 East Court Street
                            Flint, MI 48502
                            (810) 232-1112